■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LATCHMAN BALRAM, Appellant. [849 NYS2d 125]—

Mercure, J.P. Appeal from a judgment of the County Court of Schenectady County (Richards, J.), rendered September 15, 2006, upon a verdict convicting defendant of the crimes of sodomy in the first degree (two counts), course of sexual conduct against a child in the first degree, rape in the second degree (three counts), unlawful imprisonment in the first degree and endangering the welfare of a child.

Defendant and the victim (born in 1990) allegedly engaged in various sexual acts from 2002 until 2005, when defendant learned that the victim informed another family member of the sexual abuse. Defendant then allegedly locked the victim and various other family members in his home, destroyed all telephones in the house, threatened to kill everyone present and, when the family escaped, shot himself in the face. He was thereafter charged in an indictment with numerous crimes and, following a jury trial, convicted of sodomy in the first degree (two counts), course of sexual conduct against a child in the first degree, rape in the second degree (three counts), unlawful imprisonment in the first degree, and endangering the welfare of a child. He was sentenced to an aggregate prison term of 40 years. He appeals and we now affirm.

Initially, we reject defendant's argument that County Court improperly denied his motion to suppress written statements that he made while under the influence of powerful pain-killing drugs. "While statements and admissions are properly suppressed as involuntary where an individual is impaired by a physical condition to the extent of undermining his ability to make a choice whether or not to make a statement, voluntariness is a question of fact to be determined from the totality of the circumstances" (*People v Hughes*, 280 AD2d 694, 695 [2001], *lv denied* 96 NY2d 801 [2001] [internal quotation marks and citations omitted]; *see People v May*, 263 AD2d 215, 219 [2000], *lv denied* 94 NY2d 950 [2000]). The testimony at the suppression hearing revealed that detectives went to the hospital to interview defendant after learning that there was a possibility that he would be discharged. Prior to the interview, the detectives asked defendant's nurses if they could speak with him and were told that they could, but that defendant had a difficult

time talking due to injuries from his self-inflicted gunshot wound. Instead, defendant communicated by writing on a sheet of paper.

Nurses and an aide were present in defendant's room when the detectives arrived, and the detectives requested that the nurses remain to provide any assistance required. Defendant was read his *Miranda* rights before the detectives began questioning him. He indicated that he understood his rights, initialed a document setting forth those rights and agreed to talk to the detectives. Defendant was awake and maintained eye contact with the officers; he did not doze off at any time during the interview, require assistance in holding the pencil or paper on which he wrote, or request an attorney and that questioning stop. The interview lasted approximately 40 minutes and, in response to the officers' questions, defendant admitted that he had a sexual relationship with the victim for approximately two years, detailed their sexual activity and stated that he wanted to tell the victim that he was very sorry. At the close of the interview, one of the nurses signed the paper on which defendant wrote his admissions.

Although defendant apparently had been given morphine and other drugs at some point prior to the interview, we conclude that neither his physical condition nor the circumstances of the interview rendered it involuntary, and that the People proved voluntariness beyond a reasonable doubt (*see People v Thompson*, 34 AD3d 931, 932-933 [2006], *lv denied* 7 NY3d 929 [2006]; *People v May*, 263 AD2d at 218-219; *People v Morris*, 245 AD2d 954, 954-955 [1997], *lv denied* 91 NY2d 928 [1998]; *People v Shields*, 125 AD2d 863, 863-865 [1986], *lv denied* 69 NY2d 955 [1987]). Defendant's assertions to the contrary, as well as his claims that he was denied access to an attorney, did not write his admissions, was subjected to an increasing amount of pressure and that the officers made threats, promises and lies designed to obtain a confession are unsupported by the record.

Defendant's remaining arguments require little further discussion. To the extent that defendant challenges the evidence as legally insufficient to support the verdict, his argument is unpreserved. Although defendant made general motions to dismiss and to set aside the verdict based on insufficient evidence, he did not assert the specific deficiencies in the evidence now challenged before us; "preservation requires a detailed motion addressing the specific deficiencies in the evidence" (*People v Carter*, 40 AD3d 1310, 1311 [2007], *lv denied* 9 NY3d 873, 879 [2007]; *see People v Gray*, 86 NY2d 10, 19 [1995]; *People v Riddick*, 34 AD3d 923, 924-925 [2006], *lv denied* 9 NY3d 868

[2007]). Furthermore, viewing the evidence neutrally and " 'weigh[ing] the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony' " (*People v Bleakley*, 69 NY2d 490, 495 [1987] [citation omitted]; *see People v Danielson*, 9 NY3d 342, 348-349 [2007]; *People v Romero*, 7 NY3d 633, 643-644 [2006]; *see generally People v Cooper*, 88 NY2d 1056, 1058 [1996]), we conclude that the verdict is not against the weight of the evidence. Defendant's remaining arguments—that he received ineffective assistance of counsel and that his sentence was harsh and excessive—have been considered and found to be lacking in merit.

Peters, Spain, Carpinello and Lahtinen, JJ., concur. Ordered that the judgment is affirmed.